The opinion of the court was delivered by
McEnery, J.
The Oity Council of New Orleans enacted'Ordinance No. 6647, council series, entitled “ an ordinance providing for the inspection of steam boilers, tanks, pipes, apparatus, etc., and to create a board of examiners and inspoctors of enginers in charge of the same, and to provide for the penalties.”
Section 1 of the ordinance creates the office of inspectors and prescribes the qualifications of the members of the board.
Section 2 fixes the term of office of the members of the board and the aniount of the bond to be furnished.
Section 3 vests in the board the power to inspect and test every boiler and apparatus under steam pressure used to propel or operate machinery not subject to inspection under the laws of the United States, and they are required to notify all owners or users of boilers *955 and apparatus under steam pressure of the time when an inspection or reinspection and test shall be made.
Section 4 that the inspectors shall be furnished with an office at the City Hall.
Section 5 requires that the owners or users of boilers or steam generating apparatus under steam pressure must have the same inspected before use and at least once a year thereafter, and for every neglect or refusal to have said inspection and test made they shall, upon conviction thereof by the recorder having jurisdiction, be fined a sum of not more than $25, and in default of payment of said fine shall be imprisoned for not more than thirty days, or both.
Section 6 requires every owner and user of a boiler, etc., to employ at least one competent engineer holding a license or permit from the board, and a neglect to conform to this requirement is visited by fine, and, in default of payment, imprisonment.
Section 7 provides for the examination by the board of engineers, a certificate of license costing the sum of $5 for the first year and $2.50 for each renewal, which is required annually.
Section 8 regulates the amount of steam pressure as allowed by the certificate of the board of examiners.
Section 11 regulates the fees for inspection, which are required to be paid by the owners of the steam machinery and boilers, and the fees for inspection are graduated from $3 to $17.
The defendant, owner of the Marine Dry Dock, situated within the corporate limits of the city, refused to have his boilers and machinery inspected in accordance with the provisions of said ordinance and he was arrested, tried and convicted before the Fourth Recorder’s Court of said city. He appealed on the ground of the illegality and unconstitutionality of said ordinance.
If the ordinance is legal and valid, the power of the recorder to inflict the penalty is undoubted since the passageof Act No. 41 of 1892, which authorizes the recorder “to enforce obedience to or to punish the violation of all ordinances passed by the City Council thereof in execution of the powers and duties indicated in Secs. 7 and 8, and the amendments thereof of Act No. 20 of 1882, known as the charter of the city of New Orleans, by fine or imprisonment, or both, or by imprisonment in default of the payment of the fine, provided that the fine shall not exceed $25 for each offence, nor the imprisonment more than thirty days as provided by Sec. 12 of Act 131 of 1877.”
*956 The penalty therefore under said act can be enforced for the violation of a city ordinance, as the right has been expressly conferred by the Legislature.
The only question therefore which is presented is as to the power of the Oity Oouncil to enact said ordinance. It is admitted that there is no express power granted to the city in its charter to'create the office of inspector and a board of inspectors of boilers and steam apparatus, and to require the owners and users of boilers and steam apparatus to employ engineers licensed by the city and for said users of such boilers and machinery to submit them to inspection and to pay fees therefor.
The contention of the city of New Orleans is that its charter authorizes it to pass all ordinances necessary to preserve the peace and good order of the city, and to maintain its cleanliness and health, and therefore it has the power to enforce by fine and imprisonment the violation of an ordinance for the protection of life and property, and that said ordinance was enacted for the protection of the lives of the citizens of New Orleans.
If said ordinance springs from a necessary and implied incident to the power expressly granted to preserve the public peace and to maintain the cleanliness and health of the city, it is a valid ordinance.
There can be no doubt that it does not spring from the power to preserve the public peace as incident to the exercise of that power.
Ordinances to preserve the public health have been liberally construed, and the authorities have gone to a great length in enumerating the implied powers of municipalities to enact laws to protect the community from infectious and contagious diseases, from bad water, against nuisance injurious to health, and noxious odors and gases. As the preservation of the public health and the safety of the inhabi-tants is one of the chief purposes of local government, all reasonable ordinances in this direction have been sustained.
The ordinance in question does not pretend to preserve and promote public health.
But it is claimed that it protects the life of the citizen by providing for the inspections of steam boilers, etc., and this is implied from the power to legislate for the public health, and that its preservation is necessary to protect the life of the citizen.
Ordinances of this character, to preserve public health, are generally directed to those objects which in themselves are presumed *957 to be injurious to the public health, such as those enacted for the purpose of abating nuisances which are injurious to health, the location and regulation of markets, hospitals, slaughter houses, cemeteries, etc.; tho'se for the prevention of the introduction of contagious and infectious'diseases and their dissemination in the community, and on all matters which may promote the cleanliness and health of the city.
The establishment of steam machinery in a particular locality is not in itself injurious to public health. Tt is dangerous only either frpm coming into too close proximity to it, or from the explosion of boilers, or the breaking of the machinery.
If the ordinance is a valid one, it must fall under the general welfare clause, either found in charters of municipalities or inferred from the powers granted. Dangerous articles, such as gunpowder, oil, dynamite, or other such articles composed of elements which are likely to explode from the slightest extraneous causes, by the agitation of the particles composing them, are generally regulated under this implied or granted authority as to their location and sale; but even in these cases an enlargement of the powers granted will not be exercised further than necessary to carry into effect the specific power granted.
In the instant case the power to create the office of inspector and a board of inspectors and examiners, with the power to examine engineers and to grant certificates of competency, and to inspect boilers, etc., is nowhere to be found in the city charter, and the necessary implication for it can not be inferred from any of the powers granted. Probably the only implication ■ from the granted powers found in the charter would be the right to locate steam boilers, machinery and apparatus in a safe place, where an explosion would do the least injury.
It has been held, and properly so, that under the authority to make police regulations or to pass by-laws for the good government'of the corporation, it has the right to require hoistaways inside of stores to be enclosed by a railing and closed by a trap after business hours of the day. It was regarded as a reasonable regulation because it did not unreasonably interfere with private rights. But if these owners of the hoistaways had been compelled to pay for their repeated inspections, there can be no doubt that the exactions would have been held to be unreasonable.
*958 We have carefully examined the ordinance and find it illegal in every feature. There is no power in the charter to authorize it; it is not a necessary implication from the specific powers granted, and is unreasonable.
It is therefore ordered, adjudged and decreed that the judgment appealed from be avoided, reversed and annulled, and it is now decreed that said Ordinance No. 6647, Council Series, be declared null and void and the prosecution of defendant thereunder be dismissed.
Rehearing refused.